TIMOTHY HILL & Wife *vs.* CALEB W. SAYLES.

The verdict of a sheriff's jury having restricted a mill owner from keeping up his dam and flowing the land above during certain months in the year, he is liable to the land owner, in an action at common law, for flowing the land during those months; although he causes such flowing through a canal cut by him, by the side of the stream, after the verdict, instead of causing the water to flow back in the natural stream, as it flowed before the verdict: And it is no defence to such action to show, that the flowing complained of was not occasioned by the particular structure, which created the obstruction, at the time of the trial by the sheriff's jury, and which the jury had in view in giving their verdict, but a different one; that the new channel, dug by the defendant, was of greater capacity, and would carry off the water more freely and fully from the plaintiff's land, than the old channel, and was kept open during the months specified in the verdict; or that since the verdict of the jury, the defendant had added a large amount of machinery to his mills.

THIS was an action of trespass on the case for flowing a certain tract of land in Wrentham, described in the declaration, from the 1st day of May, 1846, to the 1st day of November in the same year; and was tried before *Fletcher*, J., in this court.

The declaration contained two counts, the first of which set forth the plaintiff's ownership of the land, the damming up and obstruction by the defendant of the flow of the water of a brook running through the land described, and the consequent flowing and injury of the plaintiff's land. The second count set forth, in addition, the proceedings on a complaint, made by the plaintiffs against the defendant, under the mill act; the verdict of a sheriff's jury, restricting the defendant from keeping up his mill dam from the 1st day of May to the 1st day of November in each year; the acceptance of the verdict, and judgment thereon; and alleged that the defendant had kept up his dam and flowed the plaintiff's land during these months. The two counts were precisely similar in form to those inserted in the declaration

in a former case between the same parties, for flowing the same tract of land in 1845, which are given at length in the report of that case in 12 Met. 143.

The defendant pleaded the general issue, and filed a specification of defence, alleging, that he had mills on the stream below the land of the plaintiffs, and had a right to dam up the waters of the stream to create a head to drive his mills; that he had conformed to the verdict of the sheriff's jury mentioned in the second count of the plaintiffs' declaration; that since the verdict of the sheriff's jury in 1843, he had added a large amount of machinery to the quantity then in his mill, and that a greater head of water was required to drive his machinery, and that he had a right to keep up the water for that purpose.

It was proved or admitted, that upon the stream contiguous to the plaintiffs' land, there was an ancient dam, through which the water was accustomed to flow; and that between the said dam and the defendant's factory dam, there was another dam, with gates in it, which could be opened and closed at pleasure; that the factory dam made the mill pond; that after the finding of the verdict set forth in the plaintiffs' declaration, the passage way in the dam first mentioned, through which the water of the stream had been accustomed to flow, was closed for the purpose of making a reservoir on the defendant's land below said dam; and the water of the stream was diverted from its natural channel, and carried in a new channel around and above the upper dam, and through the defendant's own land, into the more easterly part of the mill pond; that the gates of the second dam, after the water of the stream had been obstructed from flowing through the first-mentioned dam, as aforesaid, were kept closed for the purpose of preventing the water of the reservoir from flowing into the mill pond; the mill pond thereafterwards being ordinarily supplied by the waters of the stream which flowed through the new channel.

The defendant offered to prove, that the factory dam remained as it was in 1843, when the jury rendered their verdict, and had at all times been kept closed, which was

necessary for the operation of the mills; that the flowing upon the plaintiffs' meadow was caused by the factory dam only, which flowed the water back through the new trench upon the meadow; .that at the trial before the sheriff's jury, in 1843, mentioned in the second count, the plaintiffs expressly stated to the jury, that they made no complaint against the factory dam, but that they complained only of the middle dam; that at the time of the hearing before the jury, no evidence was offered respecting any other dam, except the middle dam, and that the jury viewed no other dam; that the jurors, (whom he proposed to call as witnesses), at the time of rendering their verdict, had in view no other dam but the middle dam, and would not have signed the verdict, if they had supposed that it extended to the factory dam; that the new channel dug by the defendant was of greater capacity, and would carry off the water more fully and freely from the meadow, than the old channel of the stream, and passed through a part of the reservoir or middle dam, and having been kept open and unclosed from the 1st of May to the 1st of November, in each year, this was a compliance with the verdict of the jury set forth in the second count of the plaintiffs' declaration, ordering the dam to be kept open and unclosed from the 1st day of May to the 1st day of November, in each year; and, that he had added a large amount of machinery to his mills, since the verdict of the jury in November, 1843.

All the above evidence was rejected by the judge, who instructed the jury, that if they were satisfied that there was a dam erected by the defendant across the brook in question; that the dam had not been kept open and unclosed from May 1st to November 1st; and that in consequence thereof, the plaintiffs' land had been flowed; the plaintiffs were entitled to maintain this action. Whereupon a verdict was returned for the plaintiffs, subject to the opinion of the whole court. If the evidence was properly rejected, and the instructions correct, then judgment is to be rendered on the verdict; otherwise the verdict is to be set aside, and a new trial granted.

*J. J. Clarke,* for the defendant. 1. The defendant had a right to flow by Rev. Sts. *c.* 116, §§ 1, 30, *et seq.; Stowell* v. *Flagg,* 11 Mass. 364; *Charles* v. *Monson & Brimfield Man. Co.* 17 Pick. 70; *Baird* v. *Wells,* 22 Pick. 312; *Hill* v. *Sayles,* 12 Met. 142. The only remedy in this case is by complaint. *Wolcott W. Man. Co.* v. *Upham,* 5 Pick. 292; *Fiske* v. *Framingham Man. Co.* 12 Pick. 68. 2. The complaint, on which the verdict of the sheriff's jury was rendered, speaks of "a" dam, whereas there were three dams; the complaint specifies no particular dam, and affords no way of telling to which dam the proceedings related, nor which caused the flowing. The evidence offered to show which dam the jury were called to view, and that the factory dam caused the injury, was admissible. *Eastman* v. *Cooper,* 15 Pick. 276, 279, 286. 3. The defendant also offered to prove that he had increased his machinery. The remedy in such case is by a new complaint under the statute. *Johnson* v. *Kittredge,* 17 Mass. 76; *Leonard* v. *Schenck,* 3 Met. 357; Rev. Sts. *c.* 116, § 1; *Baird* v. *Wells,* 22 Pick. 312.

*E. Wilkinson,* for the plaintiffs.

SHAW, C. J. It appears to the court, that the questions arising in this action were settled in the case between the same parties, reported in 12 Met. 142, and that this is an action for the continuance of the same nuisance.

The point decided, upon the complaint of these parties, under the mill act, was, that the dam raised by the defendant, for a head of water for working his mill, should not be kept up so as to flow the complainants' meadow, during a certain part of each year. This was within the jurisdiction of the jury by statute, and their finding is conclusive.

It is not any particular structure of stone, wood, or earth, to be kept open and unclosed, to which such a judgment applies; it applies to a structure or contrivance, made to raise a head of water by obstructing the natural course of a stream, the effect of which is to immerse the complainants' meadow during summer.

The attempt of the defendant was to show that a particular structure, called the middle dam, was that which

obstructed the flow of the water, when the sheriff's jury went out; that it was to this, and not to the factory dam, that the judgment referred. But this evidence, we think, was rightly rejected. If, when that dam was removed or kept open, the complainants' land was drained of the water, raised by raising a head of water for the mill, then the defendant had substantially complied with the judgment, and the action at common law would not lie. But if the defendant's arrangements were, that he could keep open and unclosed the particular dam, which caused the obstruction, and flooded the complainants' meadow, and at the same time, by using another dam and closing other gates, he could keep up the water to the same height, and flow the complainants' meadow, the whole year, as before; then it was an illusory and not a substantial or legal compliance with the judgment. It is stated, that the factory dam makes the mill pond; if by this is understood that this dam raises the head of water for the mill, and also floods the complainants' meadow, then it is the dam contemplated in the judgment, and this conclusion could not be affected by the evidence offered, tending to show that the jury had another in view, in finding the verdict, on which the judgment was rendered.

*Judgment on the verdict for the plaintiff.*